**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Stacy Michelle Rabon, Appellant.

Appellate Case No. 2023-001374

———————

Appeal From York County
William A. McKinnon, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-367
Submitted June 25, 2026 – Filed July 15, 2026

———————

**AFFIRMED**

———————

Deputy Chief Attorney for Capital Appeals David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Joshua Abraham Edwards, both of Columbia, and Solicitor Kevin Scott Brackett, of York, for Respondent.

———————

**PER CURIAM:** Stacy Michelle Rabon appeals her conviction for homicide by child abuse (HBCA), arguing the circuit court erred in instructing the jury that "a simple mistake by a witness doesn't mean the witness wasn't telling the truth as he

or she remembers it," because the charge constituted an impermissible and prejudicial comment on witness credibility. We affirm.

The crime in this "cold case" occurred in 1992 when a newborn female infant's body, along with the umbilical cord and placenta, was discovered wrapped in a sheet inside a plastic bag floating in the Catawba River.[1] Police determined the infant had been born alive but died from having been stabbed with scissors, also found in the plastic bag, asphyxiation, or some combination of the two. The police were unable to identify a suspect in the case, and it lay dormant until it was reopened in 2016 with the advent of DNA testing and other forensic advances. Rabon was eventually determined to be the infant's mother, and when police interviewed her regarding her pregnancy, she admitted to giving birth to the child. She told police she knew she would not be able to take care of the infant and through a work friend, Jasmine, she located a couple, Steve and Natalie, who wanted to adopt but could not because of the would-be father's felonious record.[2] Rabon hid her pregnancy from family and friends and when she went into labor at Jasmine's trailer, Steve and another man came to pick her up in a work van. She stated she gave birth in the back of the van, one of the men cut the umbilical cord, and the men took the infant. She never saw the child again.

Rabon did not testify at trial, but videotapes of her statements to police were admitted and played for the jury. Multiple members of law enforcement testified regarding the original investigation as well as the re-opened investigation. Police testified they could not corroborate Rabon's story or locate Jasmine, Steve, or Natalie through any investigative channels. Furthermore, the State also presented evidence that after the initial interview with police, Rabon inquired about the infant having supposedly died from a weapon found with the body and not by drowning. This was in spite of testimony from police that such information had not been released to the public during the second investigation and police testifying no

---

[1] The version of the HBCA statute in effect in 1992, under which Rabon was indicted, provided in relevant part that a person was guilty of the crime who:

> (1) causes the death of a child under the age of eleven while committing child abuse or neglect as defined in Section 20-7-490 and the death occurs under circumstances manifesting an extreme indifference to human life . . . .

[2] Rabon was not certain of the prospective mother's name, and she believed Steve's conviction was drug-related.

records or press information they could locate revealed that fact during the original investigation. The State also introduced evidence the infant had cocaine in its system in spite of Rabon stating she did not do drugs at the time she was pregnant and that the placenta and umbilical cord, still attached to the infant, were discovered in the bag even though she told police the umbilical cord had been cut. The jury acquitted Rabon of murder but found her guilty of HBCA. She was sentenced to life imprisonment.

First, the circuit court's instruction did not impermissibly comment on witness credibility. *See State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct. App. 2003) ("In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial."); *State v. Aleksey*, 343 S.C. 20, 27, 538 S.E.2d 248, 251 (2000) ("[J]ury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error."); *State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011) ("A jury charge [that] is substantially correct and covers the law does not require reversal."); *Sosebee v. Leeke*, 293 S.C. 531, 535, 362 S.E.2d 22, 24 (1987) ("A trial judge must refrain from any comment which tends to indicate his opinion as to the weight or sufficiency of the evidence, the credibility of witnesses, the guilt of an accused, or any fact in controversy.").

In this case, the instruction did not favor any particular witness, nor did it suggest the charge was not applicable to any statement by the defendant. Further, the instruction did not indicate any particular statement was a mistake nor did it direct the jury to infer any conclusions from a mistake. The circuit court clarified: "So if a witness misstates something, you must decide whether it was because of an innocent lapse in memory or an intentional deception." The totality of the jury charge made clear the issue of credibility was for the jury. Therefore, we conclude the charge did not have the effect of giving an opinion on any witness's testimony or the defendant's statements or the weight they should be given.

Furthermore, even if the complained-of instruction constituted an impermissible comment on credibility, we hold the error was not prejudicial as it did not contribute to the verdict. *State v. Bowers*, 436 S.C. 640, 646, 875 S.E.2d 608, 611 (2022) ("To reverse a criminal conviction on the basis of an erroneous jury instruction, we must find the error was a prejudicial error."); *id.* ("Prejudicial error in a jury instruction is an error that contributed to the jury verdict."); *id.* at 647, 875 S.E.2d at 611 (explaining if the appellate court has "any reasonable doubt as to whether the erroneous charge contributed to the verdict," it must reverse the

conviction). Here, in her video-taped statements to police, Rabon admitted to willingly giving birth to the infant in a van in the middle of the night and abandoning her to strangers with no idea who they were beyond believing that the adoptive father was a convicted felon. The jury could have concluded this admitted conduct constituted extreme indifference to human life that resulted in the infant's death even if it did not believe Rabon herself stabbed the infant and placed her in the plastic bag. *See State v. Phillips*, 411 S.C. 124, 135, 767 S.E.2d 444, 449 (Ct. App. 2014), *aff'd as modified*, 416 S.C. 184, 785 S.E.2d 448 (2016) ("Subsection 16-3-85(A)(1) does not require the State to prove a defendant acted with the intent to harm in order to prove extreme indifference. Instead, the State must prove the defendant performed a deliberate act that he or she knew would create a risk of death to the child."). Additionally, this case did not involve personal testimony by competing witnesses as to what transpired that fateful night. No witnesses claimed to have first-hand knowledge of the crime or the events surrounding it or expressed an opinion on who actually stabbed the infant and placed her in the bag in the river. Rather, the witnesses at trial testified to the investigation performed by law enforcement and its results along with Rabon's own account of what transpired. The witnesses were ably cross-examined by Rabon's counsel, and the jury found Rabon guilty of HBCA, and acquitted her of murder. Based on the foregoing, we cannot conclude the instruction affected the jury's verdict.

**CONCLUSION**

We hold the instruction did not constitute error and, assuming *arguendo* that it was erroneous, it did not prejudice Rabon.

**AFFIRMED**. [3]

**THOMAS, KONDUROS, and CURTIS, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.